CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 14 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|  |  |  |
|---|---|---|
| SHANNON CAVE, | ) | Criminal Action No. 7:03-CR-00157 |
| Petitioner, | ) |  |
|  | ) | **2255 MEMORANDUM OPINION** |
| v. | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
| Respondent. | ) | Senior United States District Judge |

Shannon Cave, a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Cave asserts prosecutorial misconduct, and charges that his counsel was ineffective in a number of respects, resulting in constitutional violations relating to his conviction and sentence. Respondent filed a motion to dismiss and Cave an opposition brief, making the matter ripe for disposition. Because both parties presented materials outside the pleadings for consideration, the court will treat the United States' motion as one for summary judgment. Upon review of the parties' submissions and the case record, the court finds that the United States' motion for summary judgment must be granted, and Cave's motion for § 2255 relief must be denied.

### I. Background and Procedural History

On November 19, 2003, Cave was charged in a one count Indictment with possession of more than fifty grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On July 25, 2005, the government filed a notice of enhancement under 21 U.S.C. § 851, which states that Cave is subject to a mandatory life term of imprisonment as a result of two prior felony convictions. At the close of the two-day jury trial, a jury found Cave guilty on July 28, 2005.

On August 12, 2005, Cave filed his motion for judgment of acquittal or, in the alternative, a new trial. During sentencing on December 13, 2005, Cave orally renewed this motion, arguing that judgment of acquittal was necessary because the government failed to present sufficient evidence to support a guilty verdict. In support of the motion for new trial, Cave argued that the perjured testimony of two government informants rendered the trial unfair. After oral argument, this court orally denied the motion for judgment of acquittal and motion for a new trial. That same day, the court sentenced Cave to the mandatory life sentence under 21 U.S.C. § 851.

On December 16, 2005, Cave timely noted a direct appeal and raised three issues: (1) insufficiency of the evidence; (2) that this court erred in denying his motion for a new trial based on the perjured testimony of fellow prisoner Jesse Hairston; and (3) that this court erred by improperly calculating his criminal history, resulting in an illegal life sentence.[1] On October 27, 2006, the United States Court of Appeals for the Fourth Circuit affirmed Cave's conviction and sentence. Cave subsequently filed a petition for rehearing en banc, which the United States Court of Appeals for the Fourth Circuit denied on December 19, 2007.

On March 12, 2008, Cave filed this § 2255 action, formally listing nine grounds for relief: (1) prosecutorial misconduct in violation of due process for knowingly offering false testimony by a key government witness; (2) prosecutorial misconduct in violation of due process for securing a grand jury indictment impermissibly based on false hearsay; (3) prosecutorial misconduct in violation of due process for knowingly providing perjured witness testimony and a

---

[1]    Cave's counsel filed a formal brief, which raised two grounds of error. Subsequently, Cave filed a pro se motion to strike the formal brief and a motion for leave to file a pro se supplemental brief. The Fourth Circuit considered all claims in both briefs. See United States v. Cave, 203 Fed. Appx. 536, 2006 WL 3059888, at *1 (4th Cir. October 27, 2006) (Dkt. No. 96).

violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) for withholding a document that tends to impeach the credibility of government informant witnesses; (4) ineffective assistance of counsel for failing to properly impeach a key government witness on cross examination based on prior inconsistent state court testimony; (5) ineffective assistance of counsel for failing to challenge the indictment, which is impermissibly based false hearsay; (6) ineffective assistance for failing to more thoroughly investigate and challenge the testimony of various government witnesses; (7) ineffective assistance for failing to challenge federal court jurisdiction; (8) ineffective assistance of counsel for failing to investigate and challenge the sufficiency of a prior drug conviction as a felony drug offense; and (9) actual innocence.

In support of his motion, Cave submitted several exhibits and extensive argument. The United States' motion for summary judgment included a thorough affidavit from Cave's counsel during the pretrial, trial, sentencing, and appeal proceedings. Cave did not include further exhibits in his opposition brief.[2]

## II. Standards of Review

### A. Motion for Summary Judgment

The court must treat the United States' motion as one for summary judgment, as both parties submitted materials outside of the pleadings. Fed. R. Civ. Pro. 12(d).[3] In reviewing a motion for summary judgment, the court views the facts, and inferences to be drawn from those

---

[2]     For reasons explained <u>infra</u>, the court finds that an evidentiary hearing is unnecessary because "the motion and the files and records of the case conclusively show that [Cave] is entitled to no relief." 28 U.S.C. § 2255(b).

[3]     The parties received reasonable and explicit notice of the court's intention to convert the United States' motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on July 3, 2008, which was returned as undeliverable but reissued on July 21, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. Nos. 118, 120).

3

facts, in the light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Ultimately, summary judgment is only proper where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Section 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Under § 2255, a prisoner in federal custody may challenge his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a petitioner bears the burden of proof by a preponderance of the evidence. <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir.1958).

### C. Ineffective Assistance of Counsel

In order to successfully challenge a sentence on the basis of ineffective assistance of counsel, Cave must satisfy the requisite test set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In <u>Strickland</u>, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. <u>Id.</u> at 687.

To satisfy the first prong, a habeas petitioner must show that his counsel's performance was deficient. <u>Id.</u> "Deficient performance" is not merely below average; rather, counsel's

4

actions must fall below objective standards of reasonableness. Id. at 687-88. In assessing an attorney's performance, judicial scrutiny must be "highly deferential" to tactical decisions and the court must filter from its analysis the "distorting effects of hindsight." Id. at 689. With respect to the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Under the second Strickland prong, a petitioner must show that prejudice resulted from counsel's deficient performance. Id. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. at 694.

Failure to satisfy either prong is fatal to a petitioner's claim, so "there is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Thus, "[i]f [a] defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Strickland, 466 U.S. at 697).

### III. Analysis

#### A. Multiple Claims of Denial of Due Process[4]

##### 1. Ground One—Inconsistencies in Trooper Brannock Testimony

---

[4]      Cave did not raise any of grounds One through Three of his motion—arguing denial of due process—on direct appeal. The court notes that because Cave could have raised these due process claims on direct appeal, they are procedurally defaulted from collateral review under § 2255. See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994)); Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 91 L. Ed. 1982 (1947). However, because procedural default is generally an affirmative defense, Yeatts v. Angelone, 166 F.3d 255, 260-61 (4th Cir. 1999), which the government did not raise, the court declines to grant summary judgment on this ground and will instead address Cave's claims on their merits.

As his first ground for relief, Cave argues that the government engaged in prosecutorial misconduct when Virginia State Police Sergeant Matthew Brannock ("Trooper Brannock")—an undisputedly material government witness—provided federal court identification testimony that proved inconsistent with his prior state court testimony. (§ 2255 Mot. at 4, Dkt. No. 106). In general, Cave contends that because the state charges were dismissed at the preliminary hearing stage for lacking probably cause, and because his state prosecution was nolle processed, the United States necessarily embellished key witness testimony in order to convict in federal court. Id. To that end, Cave argues that because Trooper Brannock provided inconsistent statements, the prosecution knew or reasonably should have known he was lying.

This claim fails on the merits. In assessing a claim of prosecutorial misconduct, the court must determine whether "the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotation marks omitted). "Generally, due process is denied if the government knowingly uses perjured testimony against the accused to obtain a conviction." United States v. Griley, 814 F.2d 967, 970-71 (4th Cir. 1987). However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." Id. (emphasis added).

Cave alleges that Trooper Brannock offered contradictory testimony; therefore, the government knew or reasonably should have known he was committing perjury. (Mem. in Sup. at 4, Dkt. No. 112). Specifically, Cave argues that Trooper Brannock offered inconsistent testimony regarding (1) a description of how the box of cocaine was dropped out of a window and (2) whether Trooper Brannock knew the window was the bathroom window, or another

6

window, when he saw the box drop. (Id. at 3-4). In support of this claim, Cave highlights

Brannock's federal trial testimony:

> Q. So what happened there at the window?
>
> A. As soon as the window comes open, and I step back and kind of duck down a little bit, a silver box or multi-color box was dropped out of the window right in front of me.
>
> Q. Did you see how it got dropped out of the window?
>
> A. Just two arms come out like this, basically, at that particular angle and just dropped it like that.
>
> Q. Could you describe the arms to us?
>
> A. It was African male, dark pigment. I guess by judging his arms, he could have been overweight.
>
> Q. Were they large arms?
>
> A. They were, they were.

(Mem. in Sup. at 2, Dkt. No. 112; July 27, 2005 Trial. Tr. at 11-12, Dkt. No. 60). (emphasis

added).

Cave contrasts this testimony with Brannock's prior state preliminary hearing testimony:

> Q: What did you observe from the rear of the residence?
>
> A: As I approached from the rear, I took position on the back side of the residence. Just beyond the back door—I think there was a back door and another window. I stood roughly back from that window providing an overwatch. A couple more Roanoke City police officers came around. As they were standing at the back door, I stood there just a short period of time when a box come out what was later determined to be the bathroom window, silver looking cell phone box, just a container that had a cell phone. I reached down and picked up the box after it came out and then proceeded to go in behind the Roanoke City officer that had just went in basically about the same time the box came out the window. I went into the backside of the residence.

(Mem. in Sup. at 3, Dkt. No. 112; July 27, 2005 Trial Tr. at 42, Dkt. No. 60) (emphasis in Mem.

in Sup.).

At most, Cave has cited inconsistent testimony by a government witness, which does not suffice to prove prosecutorial misconduct. Initially, as the government pointed out on re-direct, Trooper Brannock was asked different questions at the federal trial than at the state preliminary hearing, which cuts against any claim of inconsistency.[5] Moreover, Cave has offered no evidence—beyond his own bare allegations—that the government knowingly offered false testimony. Furthermore, Cave ignores that defense counsel effectively brought out any inconsistencies at trial during a very thorough cross-examination of Trooper Brannock. For instance, on cross, Brannock admitted that his identification of Cave differed at the federal trial from his identification testimony at the state level. (July 27, 2005 Trial Tr. at 62-63, Dkt. No. 60).

At the end of the day, the jury is "the sole judge of the credibility of the witnesses." See United States v. Beidler, 110 F.3d 1064, 1070 (4th Cir. 1997). Because Cave has not shown that the prosecution knowingly offered false testimony, and cannot establish that he was prejudiced by any perjured testimony, even if the prosecution was aware of it, this court holds that his first ground for relief fails.

### 2. Ground Two—Indictment based on false hearsay

Cave next argues that the grand jury indictment against him was impermissibly based on false hearsay. (§ 2255 Mot. at 5-6, Dkt. No.106). Specifically, Cave contends that the grand

---

[5]    In state court, Trooper Brannock was asked what he "observed," while at trial he was asked much more pointed questions: "what happened there at the window?", "[d]id you see how it got dropped out of the window?", and "[c]ould you describe the arms to us? . . . Were they large arms?" (Mem. in Sup. at 2-3, Dkt. No. 112; July 27, 2005 Trial Tr. at 11-12, 42, Dkt. No. 60). Given the inconsistent phrasing of the questions, it is hardly surprising that the respective answers differ as well. On re-direct, the government clarified the different phrasing:

    Q: Was anybody asking you to identify Cave at Richard Shine's hearing?

    A: Not that I recall, no sir.

(July 27, 2005 Trial Tr. at 65, Dkt. No. 60). (emphasis added).

8

jury testimony of Virginia State Police Special Agent Aaron Valley ("Agent Valley") "was inconsistent with the prior testimony of the declarant Brannock." (Mem. in Sup. at 5, Dkt. No. 112 (citing Grand Jury Tr. at 2, Dkt. No. 112, Ex.)). Cave argues that this information is false because Valley had no actual knowledge of this incident and instead relied upon inaccurate second-hand information. Cave asserts that the prosecution knew "that it would have to embellish the testimony of Brannock to secure an indictment, since his original testimony in the state court proceedings had already proved to be lacking." (Mem. in Sup. at 7, Dkt. No. 112).[6]

This claim fails on the merits. "Relief from an erroneous indictment after a case has been decided by a petit jury is rarely granted." United States v. McDonald, 61 F. 3d 248, 252 (4th Cir. 1995), overruled on other grounds by United States v. Wilson, 205 F.3d 720 (4th Cir. 2000). In general, "a defendant is not entitled to litigate the sufficiency of evidence presented to the grand jury." United States v. Newcomb, 488 F.2d 190, 192 (5th Cir. 1972). Accordingly, "[o]nly a defect so fundamental that it causes the grand jury to no longer be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." Id. (internal quotation marks omitted). As a result, the court "will not hear a challenge to the reliability or competence of the evidence presented to the grand jury, and the mere fact that evidence itself is unreliable is not sufficient to require dismissal of the indictment." Id. (internal quotation marks omitted). As a rule, an indictment may be quashed on grounds of prosecutorial misconduct only if improper conduct "substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such

_____

[6]     Cave's claim that his counsel was ineffective at trial for failing to investigate Valley's grand jury statements is discussed infra at Part III(B)(2).

9

violations[.]" Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988).

In United States v. Mechanik, 475 U.S. 66, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986), the United States Supreme Court discussed whether joint testimony before a grand jury, in violation of Federal Rule of Criminal Procedure 6(d), warranted reversal of a conviction despite a jury conviction. The Court determined that even if the joint testimony before the grand jury was improper, "the supervening jury verdict made reversal of the conviction and dismissal of the indictment inappropriate." Id. at 70, 106 S. Ct. 938. The Court acknowledged the importance of a subsequent jury finding that the defendant was guilty beyond a reasonable doubt: "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." Id.

Applying these principles to this case, the court concludes that even if Valley's grand jury testimony was inaccurate or false, that falsity provides no basis for granting Cave collateral relief by way of dismissal of the indictment. At the outset, it is fundamental that a grand jury indictment may be based entirely upon hearsay. See Costello v. United States, 350 U.S. 359, 363-64, 76 S. Ct. 406, 100 L. Ed. 397 (1956) (rejecting the argument that a grand jury may not rely on hearsay evidence). Additionally, Cave offers no evidence that Valley's testimony was false, relying instead on the fact that it was second hand to demonstrate it was, therefore, false. Furthermore, as discussed supra at Part III(A)(1), defense counsel energetically and successfully cross examined Trooper Brannock—the declarant—on the identification issue at trial. (July 27, 2005 Trial Tr. at 31-64, Dkt. No. 60). In any case, Cave has failed to allege facts indicating that

10

the prosecutor acted improperly in examining Valley during grand jury proceedings. Therefore, even if Valley's grand jury testimony was based entirely on hearsay, the indictment is not constitutionally invalid.

Finally, because the petit jury subsequently convicted Cave beyond a reasonable doubt, any error in the grand jury proceedings is harmless. See Mechanik, 475 U.S. at 73, 106 S. Ct. 938 (providing that the "petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation"). "In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." Id. For that reason, even if Valley's grand jury testimony contained misstatements, the Court holds that Cave has nonetheless failed to establish a sufficient basis for relief on his second claim.

### 3. Ground Three—Perjured Jailhouse Informant Testimony

In his third claim for relief, Cave alleges that his due process rights were violated when the government engaged in prosecutorial misconduct regarding false trial testimony by jailhouse informants Jesse Hairston and Sherwood Barksdale. (§ 2255 Mot. at 7, Dkt. No. 106; Mem in Sup. at 7-10, Dkt. No. 112). In addition, Cave contends that the government violated due process by supporting Agent Valley's sentencing testimony that only one of the jailhouse informants—Hairston—had perjured himself at trial when there was in fact evidence that the other informant—Barksdale—also testified falsely. (Mem. in Sup. at 7-10 (citing excerpt of July 27, 2005 Trial Tr. at 6, 8, 12, 14, 17, 22, 27& 28, Dkt. No. 60)). In support of this claim, Cave argues "[the government] withheld evidence and was aware that both of the jailhouse informants had attempted to have another inmate named Darel Keith Taylor 'lie to the government.'" (Id.)

11

(quoting § 2255 Mot. Ex. 1 (Nov. 22, 2005 Corresp. from Special Agent Underwood to Assistant United States Attorney Craig Jacobsen ("AUSA Jacobsen"))).

This claim fails on the merits. First, with respect to Hairston's perjured testimony, "[a]ll parties involved agree that Hairston testified falsely." (Mot. Dis. at 6, Dkt. No.117; Sent. Tr. at 1, Dkt. No. 64). Although Hairston's testimony was indisputably false, there is no evidence the government knew that Hairston would lie before presenting the testimony at trial. Indeed, the government was the first to present Hairston's perjury to Cave, defense counsel, and the court. (See Sent. Tr. at 1-3, Dkt. No. 64).[7] It can hardly be argued that the government knowingly offered perjured testimony by Hairston.

Similarly, Cave argues that because Barksdale testified inconsistently between direct and cross examination at trial and sentencing, and because the government withheld a document that would have impeached Barksdale, the prosecution induced perjury. Unlike Hairston, Barksdale has not admitted that he testified falsely at any time and, unlike Hairston, Barksdale has not failed a lie detector test on the matter.[8] Furthermore, Cave has failed to establish that the government knowingly allowed Barksdale to commit perjury. Ultimately, therefore, these claims lack merit.

---

[7]    During this conversation at sentencing, the government noted that "[Hairston] has not gotten credit from the government for testifying because of [the perjury at trial] and he is now pu lling his forty-five (45) years, and may in fact, be prosecuted for perjury as well." (Sent Tr. at 2, Dkt. No. 64; see also § 2255 Mot. Ex. 1 (Nov. 22, 2005 Corresp. from Special Agent Underwood to Assistant United States Attorney Craig Jacobsen (providing that "Jesse Hairston will be prosecuted for the previously unknown perjury.")).

[8]    Cave points to defense counsel's affidavit for support that Barksdale admitted to perjuring himself. (Mem. in Sup. at 8; Dkt. No. 112); see also Defense Counsel Affidavit, Dkt. No. 117, Ex. 4). Cave misreads counsel's statement. In his affidavit, defense counsel states: "Subsequent to trial, [the] U.S. Attorney after some concern[s] raised by counsel in regards to the truthfulness of Jessie Ben Hairston's testimony gave him a lie detector test and Sherwood Barksdale later admitted he perjured himself at trial giving false testimony." (Defense Counsel Affidavit at 2, Dkt. No. 117, Ex. 4). Counsel is not stating that Barksdale admitted that he perjured himself at trial, but that Barksdale admitted Hairston perjured himself at trial.

12

Once Hairston's perjury was known at sentencing, defense counsel effectively highlighted any inconsistent statements made by Barksdale on cross-examination. (Sent. Tr. at 14-17, Dkt. No. 64). Similarly, at sentencing, defense counsel provided pointed and energetic argument that Barksdale perjured himself at trial. (Id. at 5-8). Specifically, counsel argued that because Barksdale testified at trial that Cave discussed his arrest in detail with both Hairston and Barksdale present, but Hairston admitted that contrary to his trial testimony he was only privy to the specifics of Cave's arrest through Barksdale (and not Cave), that Barksdale lied at trial about a conversation regarding specifics between the three inmates. (Id. at 5-6). [9] At sentencing, the

---

[9]      It is not entirely clear that Cave, Hairston, and Barksdale were not all present for a conversation where some facts of Cave's case were mentioned just because Hairston lied about Cave making statements to him directly. To that end, according to the sentencing hearing testimony of Special Agent John Underwood, who was investigating Hairston for perjury, Hairston "stated that he was party to several conversations between Mr. Barksdale and Mr. Cave, and that everybody in the pod knew the general circumstances about Mr. Cave's case. He stated he got the specifics about Mr. Cave's case from Mr. Barksdale." (Sent. Tr. at 18, Dkt. No. 64). Agent Underwood corroborated Barksdale's testimony that Hairston was a party to at least one conversation between all three. (Id.). On cross examination of Agent Underwood at sentencing, defense counsel attempted to demonstrate that Barksdale had lied on this point, but the Agent again reinforced Barksdale's testimony:

> Q: And, I think you've testified that Mr. Hairston said that there was at least one (1) conversation where the three (3) of them were together in the room.
>
> A: Yes, sir.
>
> Q: In the pod, I'm sorry.
>
> A: I believe there was at least one (1) specific conversation where they were all in the same cell together. Mr. Hairston—
>
> Q: They had some discussion about the case?
>
> A: Some discussion about the case and that he gathered the rest of the specific information from Mr. Barksdale later?
>
>                         ***
>
> Q: And so, if Mr. Barksdale testified that the three (3) of them had a specific conversation, then that would be false.
>
> THE COURT: I understand that Mr. Barksdale said he remembered that the three (3) of them talked about the case, but he can't remember what was said specifically. That's what Mr. Barksdale said.
>
> MR. UNDERWOOD: Yes, Sir, I believe that's what Mr. Barksdale said.

13

court rejected these arguments as they pertain to Hairston and Barksdale and overruled the judgment for motion of acquittal. (Id. at 9). For the same reasons, the court disagrees that any of these claims demonstrate prosecutorial misconduct in violation of Cave's due process rights.[10] Therefore, the court holds that Cave's third ground for relief—that the prosecutor knowingly

---

DEFENSE COUNSEL: All right, thank you.

(Id. at 20-21).

[10] Cave's contention that the government "withheld" impeachment evidence permeates these claims, but does nothing to support them and, in any event, fails to establish a separate violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Essentially, Cave argues that the government violated Brady in failing to disclose impeachment evidence that would have demonstrated that neither jailhouse informant testified truthfully at trial. Cave alleges that although Special Agent Underwood testified that Hairston provided false information in an unrelated case, Underwood and the prosecution were in fact withholding a document that indicated both Hairston and Barksdale were in league to lie in the unrelated case. (§ 2255 Mot. at 7, Dkt. No. 106; Mem. in Sup. at 9, Dkt. No. 112) (emphasis added). Cave argues that because the document was withheld, "the jury did not have the opportunity to weigh these factors when considering either of their testimony." (Mem. in Sup. at 9, Dkt. No. 112).

It is fundamental that "[a] Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006). The United States Supreme Court has further provided that

> [T]here are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Government], either willfully or inadvertently; and prejudice must have ensued.

Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

As applied to this case, Cave fails to establish that the government violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Initially, the government objects to the allegedly suppressed letter's authenticity: "A close look at the letter does not reveal who the author is, when it was written, or where it has been during trial." (Mot. Dis. at 7, Dkt. No. 117). Indeed, the facts are unclear regarding whether Agent Underwood did write the letter, where this letter has been throughout Cave's case, or how Cave came into possession of it for submission with his 2255 motion.

However, if Agent Underwood actually wrote this letter to the prosecutor, who in fact received the letter pre-sentencing and then suppressed it, Cave's claim on this point still fails. First, even if Cave could establish that the letter had impeachment value at trial, he cannot establish that the government suppressed the evidence at trial because the letter Cave points to is dated November 22, 2005 and his trial ended on July 28, 2005 (about 8 months prior). Further, even if the government suppressed the letter at sentencing, Cave cannot establish prejudice because even without Hairston and Barksdale's testimony, this court finds that the uncontroverted evidence establishes that Trooper Brannock in fact saw Cave drop a box of cocaine out of a bathroom window. In other words, the testimony of Trooper Brannock was alone sufficient to convict. Therefore, this court holds that Cave's Brady claim fails.

14

offered perjured testimony by Hairston, Barksdale, or Agent Underwood, or that the government violated Brady—fails.

### B. Multiple Claims of Ineffectiveness

#### 1. Ground Four—Ineffectiveness for Failure to Impeach Trooper Brannock on Cross

Cave next requests § 2255 relief because his counsel was ineffective for failing to properly cross-examine and impeach Trooper Brannock at trial regarding prior inconsistent testimony given at the state preliminary hearing. (§ 2255 Mot. at 8-9, Dkt. No. 106). Cave nitpicks defense counsel's cross-examination of Trooper Brannock to support his initially broad claim that "[defense counsel] made no effort to confront Brannock with his previously inconsistent statement in the state court proceedings." (Mem. in Sup. at 11, Dkt. No. 112). (emphasis added). Later in his memorandum, Cave backs off from this broad assertion and states rather that counsel instead erred "by mentioning essentially insignificant prior sworn testimony, as opposed to that which would have clearly been more damaging to Brannock's credibility." (Id. at 11). (emphasis added). This claim has no merit whatsoever.

Several general principles guide the review of trial strategy critiques packaged as ineffective assistance claims. "In reviewing a claim for ineffectiveness of counsel under the Sixth Amendment, the reviewing court does not sit to "grade" the lawyer's trial performance; it examines only whether his conduct was reasonable 'under prevailing professional norms,' and in light of the circumstances. Carter v. Lee, 283 F.3d 240, (4th Cir. 2002) (quoting Strickland, 466 U.S. at 697, 688, 104 S. Ct. 2052). Consequently, a guilty jury verdict does not transform otherwise sound trial strategy into ineffective assistance: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular

15

act or omission of counsel was unreasonable." See Strickland, 466 U.S. at 689, 104 S. Ct. 2052.

"Thus, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance." United States v. Cronic, 466 U.S. 648, 657, at n.21, 104 S. Ct. 2039, 2046, 80 L. Ed. 2d 657 (1984) (citing Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) and Morris v. Slappy, 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983)).

Contrary to Cave's allegations, his counsel did thoroughly cross-examine Trooper Brannock regarding his previous identification testimony in state court. (See generally July 27, 2005 Trial Tr. at 31-64, 70-72, Dkt. No. 60). In fact, the record reveals that Cave's counsel vigorously represented him, especially on cross. His cross-examination and re-cross of Brannock constitutes thirty-five pages of the record. On several occasions, counsel challenged Brannock based on previously inconsistent statements. At the end of the day, "counsel on cross examination of Trooper Brannock was successful getting the Trooper to admit that his identification of [Cave] was different at this federal trial than the identification [at Cave's] state preliminary hearing" as follows:

> Q: Isn't it true that, in those lines [referring to Brannock's investigative notes], you stated "When I walked in the back door, I just saw an individual coming from the rear of the house. At that time, I was trying to get the situation and understand the situation, and he didn't make any comments to me or anything"?
>
> A: That's correct.
>
> Q: That's different from what you testified here today, isn't that correct?
>
> A: In relation to the weight? Is that what you're asking, sir?
>
> Q: Yes.
>
> A: I'm sorry, go ahead.

16

Q: Is that testimony different today than at the preliminary hearing?

A: Yeah, I guess it's different than what I've said today as far as specifics, yes, sir.

(Defense Counsel Affidavit, Dkt. No. 117, Ex. 4; July 27, 2005 Trial Tr. at 62-63, Dkt. No. 60).

Moreover, defense counsel also succeeded in getting the Trooper to admit that he did not mention a description of the male throwing a box out of a window in his report:

Q: And there is no mention in your report of a large black male throwing – with two hands, throwing a box out of the window, correct?

A: That's correct, yes, sir.

***

Q: But you didn't write in your report what you're testifying to here in court today?

A: That's correct, yes, sir.

(July 27, 2005 Trial Tr. at 60-63, Dkt. No. 60).

Because defense counsel effectively impeached Trooper Brannock on several occasions, Cave cannot claim that counsel's performance fell below a standard of reasonableness.

Furthermore, Cave has not demonstrated prejudice. In the end, assessing witness credibility is the sole province of the jury. See United States v. Murphy, 35 F.3d 143, 148 (4th Cir.1994); see also United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). In this case, the jury found Trooper Brannock's testimony credible at trial. Because defense counsel actually impeached Trooper Brannock and the jury found Brannock a credible witness anyway, Cave cannot demonstrate prejudice by arguing that impeaching Brannock would have resulted in a verdict of not guilty. As such, the court declines to reassess the jury's finding.

For the above reasons, the court holds that Cave's claim of ineffectiveness for failure to properly cross examine Trooper Brannock wholly fails.

17

## 2. Ground Five—Ineffectiveness for Failure to Challenge Indictment

Cave's fifth ground for habeas relief is that his counsel was ineffective at pretrial stages for failure to challenge the indictment because it was impermissibly based on false hearsay. (§ 2255 Mot. at 10, Dkt. No. 106). Specifically, Cave argues that the prosecution elicited false hearsay testimony from Agent Valley to secure an unlawful indictment. (Mem. in Sup. at 12-13, Dkt. No. 112). Because of these alleged errors, Cave argues that there is a reasonable probability that the indictment would have been dismissed against him due to prosecutorial misconduct or because it relied on false hearsay. (Id.) The court disagrees.

Though couched as an ineffective assistance claim, the court previously addressed Cave's allegations of error during the grand jury proceedings. For the same reasons expressed supra at Part III(A)(2), the court holds that Cave cannot establish any due process violation at the grand jury. As discussed supra at Part III(A)(2), Cave presents no evidence of prosecutorial misconduct relating to the testimony of Agent Valley. Furthermore, petitioner fails to establish that the indictment was constitutionally invalid because it relied on false hearsay for the reasons discussed supra at Part III(A)(2).

"[I]t is settled that a bill of indictment based upon hearsay testimony does not violate any constitutional right." Jones v. Taylor, 547 F.2d 808, 809 at n.1 (4th Cir. 1977) (citing Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956)). Therefore, a reliance on hearsay does not render an indictment constitutionally deficient because the rules of evidence do not apply in grand jury proceedings. Fed. R. Evid. 1101(d)(2). Furthermore, Cave cannot establish prejudice because he was subsequently found guilty beyond a reasonable doubt at his jury trial. When a defendant subsequently goes to trial and is found guilty by a jury as Cave was, "any error in the grand jury proceeding connected with the charging decision was harmless

beyond a reasonable doubt." <u>United States v. Mechanik</u>, 475 U.S. 66, 70, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986).

Because a pre-trial motion to dismiss the indictment would have certainly failed, defense counsel cannot be said to have rendered ineffective assistance under <u>Strickland</u>. For the forgoing reasons, the court holds that failure to challenge the indictment based on hearsay does not constitute deficient performance by Cave's counsel, and that Cave did not suffer any prejudice under <u>Strickland</u>.

### 3. Ground Six—Ineffectiveness for Failure to Investigate and Object at Sentencing to False Jailhouse Informant Trial Testimony

Cave's sixth ground for habeas relief is that his counsel was ineffective for failing to investigate the truthfulness of two jailhouse informant witnesses so that he could have effectively challenged testimony by Special Agent John Underwood at sentencing. (§ 2255 Mot. at 11, Dkt. No. 106; Mem. in Sup. at 14, Dkt. No. 112). Cave argues that a reasonable investigation would have uncovered that Hairston and Barksdale "were simply opportunistic informants" who had previously conspired to induce other inmates to testify falsely in an unrelated matter, as evidenced by a withheld document discussed <u>supra</u> at Part III(A)(3). (Mem. in Sup. at 14-15, Dkt. No. 112). Cave argues that a proper investigation would have prepared counsel to re-cross Hairston at sentencing. (<u>Id.</u> at 5). Because of these alleged errors, Cave contends he lacked available impeaching evidence for use at trial and sentencing, and therefore subsequently lost his motion for a new trial. (<u>Id.</u> at 15-16). For the reasons discussed below, this claim has no merit.

Although presented as an ineffective assistance of counsel claim, the court previously addressed Cave's allegations of error regarding the two government informants, Special Agent Underwood, and the allegedly withheld document as discussed <u>supra</u> at Part III(A)(3). For the same reasons expressed <u>supra</u> at Part III(A)(3), the court holds that Cave cannot establish

19

ineffective assistance for failure to more conscientiously explore Hairston and Barksdale's credibility.

At the outset, Cave fails to establish that a more detailed investigation would have uncovered effective impeachment evidence to use against the government informants or Special Agent Underwood. In that regard, Cave does not illustrate how defense counsel's investigation strategy fell below a standard of reasonableness. This claim is further flawed because Cave does not indicate what exculpatory or impeachment evidence, aside from the withheld document, which as discussed supra at Part III(A)(3) is generally no help to Cave, existed but was unavailable due to neglect by counsel.

In any event, Cave cannot establish prejudice in this instance. At sentencing, this court overruled the motion for a new trial notwithstanding the perjured testimony of Hairston and over defense counsel's argument that Barksdale also testified falsely. (Sent. Tr. at 21, Dkt. No. 64). Ultimately, this court denied Cave's motion because "the evidence against [Cave] was overwhelming" and, even if Hairston's testimony was material (and this court was not satisfied it was), Cave failed to establish the second or third element of the relevant test as set forth in United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976).[11] (Id. at 21-22). At that time, this court also found that Cave has had a fair trial. (Id. at 21).

———————————

[11]     The three part test of United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976) provides the relevant standard for a new trial because of a recantation by a material government witness under the rule of Larrison v. United States, 24 F.2d 82, 87-88 (7th Cir. 1928), overruled by United States v. Mitrione, 357 F.3d 712 (7th Cir. 2004). See United States v. Cave, 203 Fed. Appx. 536, 2006 WL 3059888, at *4-5 (4th Cir. October 27, 2006) (Dkt. No. 96). To satisfy Wallace, a petitioner must demonstrate that: (1) "the testimony given by a material witness is false," (2) "without it the jury might have reached a different conclusion," and (3) "the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity under after trial." Wallace, 528 F.2d at 866 (quoting Larrison, 24 F.2d at 87-88); see also United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000). If a district court is "reasonably well satisfied" that these criteria are met, it may grant a new trial. In this case, this court was not so satisfied and accordingly denied Cave's motion for a new trial.

20

On direct appeal, the United States Court of Appeals for the Fourth Circuit affirmed this court in an unpublished opinion. See United States v. Cave, 203 Fed. Appx. 536, 2006 WL 3059888, at *6 (4th Cir. October 27, 2006) (Dkt. No. 96). In particular, the Court of Appeals found that "Cave cannot satisfy the second prong of Larrison. Hairston's testimony was simply cumulative of the testimony given by inmate Barksdale. Even without Hairston's testimony, the uncontroverted evidence is that Trooper Brannock saw Cave drop the box of cocaine base from the bathroom window, and Cave admitted his conduct to Barksdale." (Id. at 5) (emphasis added). For that reason, Cave fails to show that the Court of Appeals would have ruled differently if further investigation by counsel had revealed the withheld document. Consequently, Cave has not made the requisite showing of prejudice.

Because counsel's vigorous representation throughout all stages of this litigation demonstrates a well-executed defense strategy, and because a motion to admit the withheld document would likely have failed, defense counsel cannot be said to have rendered ineffective assistance under Strickland. Therefore, the court holds that counsel did not render ineffective assistance for failure to more thoroughly investigate Hairston, Barksdale, and Special Agent Underwood, and that Cave did not suffer any prejudice under Strickland.

### 4. Ground Seven—Ineffectiveness for Failure to Challenge Federal Court Jurisdiction

In his seventh ground of collateral attack, Cave argues that counsel was ineffective for failing to challenge federal court jurisdiction after his state court charges were nolle processed. (§ 2255 Mot. at 13, Dkt. No. 106). Specifically, Cave charges that counsel improperly allowed

21

"the federal prosecutor to remove the state drug prosecution to federal court without challenging its removal[.]" (Mem. in Sup. at 17, Dkt. No. 112). The court disagrees.[12]

Pursuant to 28 U.S.C. Section 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Cave was charged with possession with intent to distribute more than fifty grams of cocaine base under Section 841(a)(1) and (b)(1)(A) of Title 21 of the United States Code, which is a "law" of the United States. The jurisdiction of state court has nothing to say about what cases are properly adjudicated at the federal level. Similarly, federal court jurisdiction does not depend on the prosecutor's motivation in bringing the charge, which, in any event, Cave has not shown was improper in this case.[13] For the forgoing reasons, this court holds that the federal district court clearly had jurisdiction in this case notwithstanding the prior state court dismissal and denies Cave's seventh ground for relief.

### 5. Grounds Eight and Nine—Ineffectiveness at Sentencing for Failure to Investigate and Challenge Qualification of Prior Conviction as Prior Felony Drug Offense and Actual Innocence of Life Sentence

Cave's eighth and ninth grounds for relief both rely entirely on the argument that his prior New Jersey drug offense was improperly classified as a prior felony drug offense under 21 U.S.C. § 841(b)(1)(A). (§ 2255 Mot. at 14, 16, Dkt. No. 106). As to his eighth ground for relief, Cave argues counsel was ineffective for failing to investigate and challenge this improper classification, which led to an illegal sentence. (Id. at 14). Under his ninth ground of collateral attack, Cave argues actual innocence because his mandatory life sentence under 21 U.S.C. §

---

[12]    During trial, defense counsel likewise "repeatedly explained" to Cave that he could be tried in federal court despite dismissal of the state court charges at the state preliminary hearing. (Defense Counsel Affidavit, Dkt. No. 117, Ex. 4 at 2).

[13]    As such, Cave's contention "that the federal prosecution was a sham for the state prosecution" is irrelevant. (Mem. in Sup. at 17, Dkt. No. 112).

841(b)(1)(A) and § 851 "was erroneously imposed because his prior drug offense in New Jersey was not a felony drug conviction." (Id. at 16).

21 U.S.C. § 841(b)(1)(A) provides that a person convicted of possession with intent to distribute more than fifty grams of cocaine base is subject to a mandatory life sentence if the defendant also has "two or more prior convictions for a felony drug offense[.]" In addition, 21 U.S.C. § 851 sets forth proceedings to establish prior convictions. In this case, the government timely gave Cave proper notice that it was relying on two prior felony drug offenses, as defined in 21 U.S.C. 802(44), such that Cave would be subject to a mandatory life sentence.[14] (Not. Enhancement, Dkt. No. 38). At that time, defense counsel "reviewed with [Cave] numerous cases which clearly showed that both of his prior convictions satisfied the statute which caused him to be sentenced pursuant to 21 U.S.C. § 851." (Defense Counsel Affidavit, Dkt. No. 117, Ex. 4 at 2).

Cave does not dispute that his Virginia offense constitutes a prior felony drug conviction for purposes of 21 U.S.C. § 851, but argues that the New Jersey drug offense is legally insufficient. Because of this alleged error, Cave argues he received an illegal mandatory life sentence. The court disagrees and, in any event, is bound by the decision of the United States Court of Appeals for the Fourth Circuit that the New Jersey offense constitutes a prior felony drug offense and Cave's mandatory life sentence is therefore lawful.[15]

---

[14] The notice provided that "[t]he offenses relied upon are as follows: 1. On or about June 26, 1992, defendant Cave was convicted of a felony, to wit: Possession of Cocaine with Intent to Distribute, in Lynchburg, Virginia. 2. On or about June 13, 1996, defendant Cave was convicted of a felony, to wit: Conspiracy to Possess Marijuana or Hashish over a certain amount, in Warren County, New Jersey." (Not. Enhancement, Dkt. No. 38).

[15] The court has previously expressed its discomfort with a mandatory life sentence in this case:

THE COURT: I'm supposed to say that the sentence the Court has imposed is reasonable under all of the circumstances, but I'm not going to say that in this case because I feel that the punishment is too harsh for the offense committed.

23

As a rule, a 2255 petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered [previously by the Court of Appeals,]" Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (1976) (citing Herman v. United States, 227 F.2d 332 (4th Cir. 1955)). In this case, Cave's eighth and ninth grounds for relief—based on the illegitimate classification of his New Jersey drug offense as a felony drug offense—were previously decided by the United States Court of Appeals for the Fourth Circuit on direct appeal. See United States v. Cave, 203 Fed. Appx. 536, 2006 WL 3059888, at *5-6 (4th Cir. October 27, 2006) (Dkt. No. 96). In pertinent part, the Court of Appeals found that "Cave fails to demonstrate any error committed by the district court that affected the outcome of the sentencing proceeding." Id. at 6. "As a result, Cave cannot demonstrate prejudice with respect to the § 851 claim or an ineffective assistance of counsel claim." Id. (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

Because the Court of Appeals already decided—and ruled against—Cave on his eighth and ninth grounds for relief, this court holds that it is not at liberty to grant collateral relief on these claims.

---

But, Congress has seen fit to impose the mandatory requirement and the Court has no option to depart from it. I'm not going to say on the record that I think that the sentence was reasonable under the circumstances. I think it's too harsh.

See Sent. Tr. at 28, Dkt. No. 64.

Nonetheless, as a legal and factual matter, the New Jersey drug offense clearly qualifies as a prior drug felony conviction. As such, the court was obliged to impose the mandatory term. The court notes that, in any event, Cave repeatedly rejected several opportunities to avoid this harsh fate. See, e.g., Defense Counsel Affidavit, Dkt. No. 117, Ex. 4 at 1 ("Counsel sought to resolve this matter by negotiating a lighter sentence than the mandatory life sentence. [Cave] refused all offers from the Government as a way to settle this case.").

24

## IV. Conclusion

For the stated reasons, the United States' motion for summary judgment (Dkt. No. 117) is **GRANTED** and Cave's 28 U.S.C. § 2255 Motion (Dkt. No. 106) is **DENIED**. An appropriate order shall issue this day.

Cave is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This court finds that Cave has failed to demonstrate such a showing, and thus declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Cave intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

**ENTER:** This _13th_ day of April, 2009.

_James C. Turk_
Senior United States District Judge

25